# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIANNE GALLAGHER** *Plaintiff* | : CIVIL ACTION : : NO. 13-0168 |
| v. | : : |
| **OHIO CASUALTY INSURANCE COMPANY** *Defendant* | : : : |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                       APRIL 9, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before the Court is a *motion for summary judgment* filed by Ohio Casualty Insurance Company ("Ohio Casualty"), premised on the arguments that: (1) Plaintiff, Marianne Gallagher ("Gallagher"), is not entitled to underinsured motorist ("UIM") insurance coverage, and (2) the doctrine of collateral estoppel precludes recovery since liability and damages were decided by an arbitrator in the underlying state court action which, subsequently, settled. [ECF 15]. Gallagher opposes the motion for summary judgment [ECF 16]. The parties filed additional replies, [ECF 19, 22], and the matter is ripe for consideration.[1]

For the reasons set forth herein, the motion for summary judgment is granted.

### BACKGROUND

Based upon a careful review of the pleadings, depositions, and exhibits, the pertinent facts, viewed in the light most favorable to Gallagher as the nonmoving party, are summarized as follows:

---

[1] Although Plaintiff requested oral argument pursuant to Federal Rule of Civil Procedure 78, oral argument was deemed not necessary and the request was denied.

On March 25, 2009, Gallagher, a resident of Pennsylvania,[2] sustained injuries when her motor vehicle was struck by a vehicle driven by Maya Rondel ("Rondel"). At the time of the accident, Rondel was insured by Allstate Insurance Company ("Allstate") with a policy limiting liability coverage at $100,000; Gallagher was insured by Peerless Indemnity Insurance Company ("Peerless"), Policy Number PLP W464343 ("Policy") with a policy liability coverage also of $100,000.[3] Gallagher made a claim for Underinsured Motorist ("UIM") benefits under her own policy, which provided $100,000 UIM coverage,[4] and a timely demand for Personal Injury Protection coverage.[5]

On December 13, 2010,[6] Gallagher filed a complaint in Bucks County Court of Common Pleas, Number 2010-12763, against Maya and Victor Rondel, alleging negligence and damages in excess of $50,000.[7]

Prior to the resolution of the state court action, on January 11, 2013, Gallagher filed this breach of contract action against Ohio Casualty (a Delaware corporation with a principal place of business in Ohio), seeking the underinsured motorist benefits coverage denied for injuries suffered in the March 25, 2009, motor vehicle accident.

On July 12, 2013, Gallagher and Rondel agreed to submit the state court matter to a private non-binding arbitration before Stephen J. Negro, Esquire. After holding an evidentiary hearing, Attorney Negro issued a document dated July 24, 2013, entitled "Settlement Value", in which he found "that the total value of Plaintiff's damages was $41,715."[8] Although in the federal complaint, Plaintiff avers that Rondel was found to be underinsured,[9] this conclusion is not indicated in the Settlement Value document.

Gallagher declined the settlement value determination and on July 29, 2013, sent a *Statement of Intention to Proceed* to the Bucks County Prothonotary requesting to move the pending matter forward. However, on August 6, 2013, this civil action was marked terminated.

---

[2] *See* Compl. ¶ 1 [ECF 1].

[3] Peerless is also known as Ohio Casualty. According to the Peerless insurance policy, all questions pertaining to claims are directed to Defendant, Ohio Casualty. *See* Policy Number PLP W464343, Dft Ex. B at 3 [ECF 15-2].

[4] *See Id.* at 8.

[5] Compl. ¶ 18.

[6] Plaintiff indicates that the complaint in the Bucks County Court of Common Pleas action was filed on January 24, 2011. However, a review of the docket for Case Number 2010-12763 reveals that an Answer to New Matter was filed by Plaintiff on that date and that the complaint was filed on December 13, 2010.

[7] *See Gallagher v. Maya Rondel & Victor Rondel*, Court of Common Pleas of Bucks County, Court Term and No. 2010-12763. Dft's Mot., Ex. C [ECF 15-3].

[8] Dft's Mot., Ex. D [ECF 15-4].

[9] Compl. ¶ 19.

2

On August 13, 2013, pursuant to the provisions of her Policy, Gallagher's counsel corresponded with Ohio Casualty, seeking approval of the tentative settlement. On September 4, 2013, Ohio Casualty responded to counsel's *Notice of a Tentative Settlement*, advising that it had no objection. Thereafter, Gallagher received $41,715, as settlement from Allstate and signed a settlement release that contained the following language: "[t]his releases all third party claims only and not claims for underinsured motorist coverage under Ohio Casualty Insurance Company, Policy No. PLP W464343, Claim No. 103624830."

**LEGAL STANDARD OF REVIEW**

When reviewing a motion for summary judgment, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is, therefore, entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party. *See Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is 'material' only if it might affect the outcome of the suit under governing law. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)); *Doe v. Luzerne County*, 660 F.3d 169, 175 (3d Cir. 2011) (citing *Gray v. York Papers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992)). A court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *See Anderson*, 477 U.S. at 248-49.

The moving party bears the initial burden of showing that there is no genuine issue of material fact and is entitled to relief. *See Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its initial burden, the nonmoving party must present "specific facts showing that there is

a genuine issue for trial," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), offering concrete evidence supporting each essential element of the claim. *See Celotex Corp.*, 477 U.S. at 322-23. The nonmoving party must show more than "[t]he mere existence of a scintilla of evidence" for elements on which said party bears the burden of production, *Anderson*, 477 U.S. at 252, and may not "rely merely upon bare assertions, conclusory allegations or suspicions." Fed. R. Civ. P. 56(e); *Fireman's Ins. Co. of Newark, New Jersey v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). There must be evidence on which the jury could reasonably find for the nonmovant. *See Jakimas v. Hoffmann–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Anderson*, 477 U.S. at 252).

In deciding a motion for summary judgment, the reviewing court should view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scheidemantle*, 470 F.3d at 538; *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009). Whenever a factual issue arises which cannot be resolved without a credibility determination, the court must credit the nonmoving party's evidence over that presented by the moving party. *See Anderson*, 477 U.S. at 255. If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party. *Id.* at 250.

## DISCUSSION

The pertinent facts alleged in the complaint are not disputed. Succinctly, these facts are: Gallagher was involved in a motor vehicle accident with Rondel. She filed a state court action and the matter was submitted by agreement to non-binding arbitration. Damages were assessed

in favor of Gallagher and against Rondel. Gallagher initially refused the arbitration assessed amount of damages but later settled the case for an identical amount.[10]

At issue before this Court is whether Gallagher has a viable legal claim. To that end, this Court will examine the arguments made regarding the applicable provisions of Pennsylvania Motor Vehicle Financial Responsibility Law; the exhaustion clause in the underinsured motorist coverage provision of Gallagher's insurance policy and relevant case law; and the doctrine of collateral estoppel.

### *Pennsylvania Motor Vehicle Financial Responsibility Law*

In a diversity matter such as this, a federal court must apply the substantive law of the state which encompasses its district, *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), including the conflict of law rules of the forum state. *DiSantis v. Allstate Ins. Co.*, 1996 U.S. Dist. LEXIS 5320, at *7 n. 4 (E.D. Pa. April 19, 1996) (citation omitted). To resolve this issue, Pennsylvania courts employ a "hybrid approach that combines the approaches of both Restatement II ... and interest analysis." *Id.* (citing *Carrick v. Zurich-American Ins. Group*, 14 F.3d 907, 909 (3d Cir. 1994) (quoting *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991) (internal punctuation omitted)). Based upon this approach, it is clear to this Court that Pennsylvania's substantive law applies in this matter since (1) the accident occurred in Pennsylvania, (2) Gallagher is a resident of Pennsylvania, and (3) the insurance contract between Gallagher and Ohio Casualty's insurance agent was entered into in Pennsylvania.[11] *Id.* (citing *PECO Energy Co. v. Boden*, 64 F.3d 852, 855 (3d Cir. 1995)).

---

[10] In her opposition to Ohio Casualty's motion for summary judgment, Gallagher contends that she settled with Rondel due to financial reasons and the protracted litigation in the Bucks County Court action. Plaintiff's motivation for settlement, however, is not germane to this Court's analysis of the issues presented in the motion for summary judgment.
[11] *See* Policy Number PLP W464343, Dft Ex. B at 3 [ECF 15-2].

5

Relevant to the arguments made in the motion for summary judgment, the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") § 1731 requires uninsured ("UM")[12] and underinsured ("UIM") motorist coverage in amounts equal to the policy's liability amount for bodily injury. 75 Pa. C.S. § 1731; *see also State Farm Mut. Auto. Ins. Co. v. Gillespie*, 152 Fed. Appx. 201, 202 (3d Cir. 2005). The MVFRL defines "underinsured motor vehicle" as one for which the limits of available liability insurance and self-insurance are *insufficient* to pay losses and damages. 75 Pa. C.S. § 1702 (emphasis added). Thus, a purpose of the UIM provisions is to provide coverage to those injured by a tortfeasor who *lacks* adequate insurance coverage for the injuries caused. *See D'Adamo v. Erie Insurance Exchange*, 4 A.3d 1090, 1095 (Pa. Super. 2010); *Generette v. Donegal Mut. Ins. Co.*, 957 A.2d 1180, 1192 (Pa. 2008) (citing *Pennsylvania National Mut. Cas. Co. v. Black*, 916 A.2d 569, 580 (Pa. 2007)) (emphasis added). UIM coverage is triggered when the tortfeasor's insurance liability coverage is *not sufficient* to compensate the innocent person for the injuries suffered in a vehicle accident. *Generette*, 957 A.2d at 1189 (emphasis added).

The UIM provision of the MVFRL requires "excess," and not "gap," coverage. *DiSantis*, 1996 U.S. Dist. LEXIS 5320, at *9 (citing *Allwein v. Donegal Mut. Ins.* Co., 671 A.2d 744, 748-49 (Pa. Super. 1996) (en banc); *North River Ins. Co. v. Tabor*, 934 F.2d 461, 464-65 (3d Cir. 1991)). "Under 'excess' [or UIM] coverage, the insured may recover *up to the limit* of the underinsured motorist coverage so long as the total recovery from all sources does not exceed the damages." *DiSantis*, at *9 n. 5 (quoting *Fisher v. USAA Casualty Ins. Co.*, 973 F.2d 1103, 1108

---

[12] Uninsured motorist coverage provides protection for persons who are injured and legally entitled to recover damages from owner/operators of uninsured motor vehicles. 75 Pa. C.S. § 1731(b). The primary legislative concerns of enacting the MVFRL were the spiraling cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. *Windrim v. Nationwide Ins. Co.*, 641 A.2d 1154, 1158 (Pa. 1994); *see also* Senate Journal, Oct. 4, 1983, 1142-53; House Journal, Dec. 13, 1983, 2139-59.

6

n. 4 (3d Cir. 1992)) (emphasis added). The statute confers the right to benefits, while the insurance policy provides the maximum amounts of benefits and the methods of obtaining them. *DiSantis*, 1996 U.S. Dist. LEXIS 5320, at *9 (citing *Johnson v. Pennsylvania Nat'l Ins. Co*s., 594 A.2d 296, 298 (Pa. 1991)).

Similarly, Gallagher's Policy defines "underinsured motor vehicle" as one "to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for 'bodily injury' under that bond or policy to an 'insured' is *not enough* to pay the full amount the 'insured' is legally entitled to recover as damages." *See* Insuring Agreement, Para. C., Resp., Ex. B at 1 (emphasis added). [ECF 16].

Although Gallagher claims that Rondel was an underinsured motorist, her contention is unsupported and without merit. There is no evidence that the arbitrator made such a finding. Further, it is undisputed that Rondel's insurance policy provided $100,000 in liability coverage, similar to Gallagher's coverage. It is also undisputed that the parties submitted the matter to arbitration before Attorney Negro, who conducted an evidentiary hearing and assessed the valuation of Gallagher's damages stemming from the accident at $41,715. This valuation is $58,285 *less* than the liability limits of Rondel's policy. Further, despite carrying the burden at summary judgment, Gallagher has failed to present evidence that her damages meet or exceed the limit of Rondel's insurance coverage; the only evidence this Court can rely upon, and which is undisputed, is an arbitrator's finding that damages totaled $41,715. Thus, applying the meaning of underinsured, as defined by both the MVFRL and Gallagher's Policy, this Court opines that Rondel is not an *under*insured motorist.

### *Exhaustion Clause*

Ohio Casualty offers that the provision in Gallagher's Policy regarding UIM coverage under Paragraph A includes, *inter alia*, an exhaustion clause, which reads as follows:

> We will pay under this [Underinsured Motorist] coverage *only if* 1. *or* 2. below applies:
>
> 1. The limits of liability under any bodily injury liability bonds or policies applicable to the "underinsured motor vehicle" have been *exhausted* by payment of judgments or settlements; *or*
>
> 2. A tentative settlement has been made between an "insurer" and the insurer of the underinsured motor vehicle" and we:
>    a. Have been given prompt written notice of such tentative settlement; *and*
>    b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Resp. Ex. B at 1 (emphases added). [ECF 16].

Gallagher argues that Part F of the Underinsured Motorist Coverage Endorsement of the Policy precludes Ohio Casualty's right to recover payment under the above-cited provision because it was given on August 13, 2013, "prompt written notice of the tentative settlement between an 'insured' [Gallagher] and the insurer of an 'underinsured motor vehicle' [Allstate]", and to which, by correspondence dated September 4, 2013, Ohio Casualty had no objection. *See Id.* at 4.[13]

Considering the argument made, this Court finds that Gallagher misconstrued these provisions. Part A of the Policy only applies to situations where there is an *underinsured* motor vehicle, which is not the case here. As stated, Rondel had $100,000 of liability insurance coverage and the damages assessed were substantially less than the total amount of coverage.

---

[13] "OUR RIGHT TO RECOVER PAYMENT: Our rights do not apply under Paragraph A. with respect to [UIM] Coverage if we:
   1. Have been given prompt written notice of a tentative settlement between an 'insured' and the insurer of an 'underinsured motor vehicle'; and
   2. Fail to advance payment to the 'insured' in an amount equal to the tentative settlement within 30 days after receipt of notification."

8

Thus, in this matter Rondel is deemed a fully insured driver, not an underinsured driver. Part F is not applicable since it requires prompt written notice of the tentative settlement between Gallagher and the insurer of an "*underinsured* motor vehicle". Under the policy provisions, Ohio Casualty is not required to provide UIM coverage to Gallagher pursuant to Part A because (a) the limits of liability coverage were not exhausted (subparagraph 1); and (b) Ohio Casualty had not made advance payment to Gallagher in an amount equal to the settlement agreement with Rondel (subparagraph 2). The exhaustion clause is a "threshold requirement and not a barrier to underinsured motorist insurance coverage," *Boyle v. Erie Ins. Co.*, 656 A.2d 941, 943 (Pa. Super. 1995) (quoting *Bogan v. Progressive Casualty Ins. Co.*, 521 N.E.2d 447, 453 (Ohio St. 1988) (citations omitted)), and helps to prevent UIM claimants from manipulating the payment of their awards. *D'Adamo*, 4 A.3d at 1095. Of interest, the *Boyle* court held that exhaustion clauses are not *per se* invalid but may not be validly interpreted to require an insured to seek recovery from parties other than the owners and operators of vehicles involved in the accident. *Chudyk-Heishman v. Liberty Mut. Ins. Co.*, 2006 WL 860316, at *3 (M.D. Pa. Apr. 3, 2006) (citing *Boyle*, 656 A.2d at 943-45).

In addition to *Boyle* being consistently applied by the Pennsylvania Superior Court,[14] a few federal courts have recognized that insureds may only recover underinsured motorist benefits to the extent that their awarded damages *exceed* the aggregate of coverage afforded by the liability carriers of other involved motorists. *See Bremer v. Prudential Property & Cas. Ins. Co.*, 2004 WL 1920708, at *4 (M.D. Pa. Aug. 18, 2004) ("Exhaustion of limits clauses provide coverage in excess of the liability limits available for the injuries in question."); *DiSantis*, 1996

---

[14] *Harper v. Providence Washington Ins. Co.*, 753 A.2d 282 (Pa. Super. 2000); *Sorber v. Am. Motorists Ins. Co.*, 680 A.2d 881 (Pa. Super. 1996); *Kelly v. State Farm Ins. Co.*, 668 A.2d 1154 (Pa. Super. 1995); *Chambers v. Aetna Cas. & Sur. Co.*, 658 A.2d 1346 (Pa. Super. 1995).

U.S. Dist. LEXIS 5320, at *17 (Under *Boyle* and its progeny, plaintiffs cannot recover underinsured motorist benefits from their insured because the tortfeasor's coverage limits from its insurer exceed plaintiffs' judgment.). This is not the case here. Gallagher's damages were assessed at *below* the liability coverage limits of Rondel's policy.

### *Collateral Estoppel*

Ohio Casualty also argues that the doctrine of collateral estoppel bars Gallagher's claim. In general, collateral estoppel or issue preclusion bars relitigation of the same issues adjudicated in a prior action. *GMAC Bank v. HTFC Corp.*, 2013 U.S. Dist. LEXIS 120261, at *8 (E.D. Pa. Aug. 13, 2013) (citation omitted). Pennsylvania state law of collateral estoppel is applicable. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (adopting, as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits.). As indicated, collateral estoppel operates to bar "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (citing *New Hampshire v. Maine,* 532 U.S. 742, 748–49 (2001)).

Under Pennsylvania law, four factors must be present for collateral estoppel to apply: "(1) the issue decided in the prior adjudication must be identical with the one presented in the later action; (2) there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication." *GMAC Bank*, 2013 U.S. Dist. LEXIS 120261, at *13 (citing *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999));

10

*see also In re Lulo*, 766 A.2d 335, 337 (Pa. 2001) (citing *Safeguard Mutual Insurance Company v. Williams*, 345 A.2d 664, 668 (Pa. 1975)).

Considering these factors, this Court is not persuaded that the private non-binding arbitration resulted in a final judgment. Once the assessment of damages was made, Plaintiff refused the amount and elected to continue in the state action. The fact that she later settled for the same amount does not render the settlement a "final judgment". Pennsylvania law considers an arbitration award to be "final" in either of two circumstances: (1) when it has been judicially confirmed; and (2) an unconfirmed award from which no appeal is taken. *Novinger Grp., Inc. v. Hartford Life & Annuity Ins. Co.*, 2008 WL 5378288, at *11 (M.D. Pa. Dec. 23, 2008); *see also Frog, Switch & Mfg. Co. v. Pa. Human Rels. Comm'n*, 885 A.2d 665, 661 (Pa. 2005); *Robbins v. Buck*, 827 A.2d 1213, 1215 (Pa. Super. 2003); *Ottaviano v. Southeastern Pennsylvania Transp. Authority*, 361 A.2d 810, 814–15 (Pa. Super. 1976) ("An unappealed from award is final and estops the party against whom it is made from proceeding further with the same cause of action." (quoting *Romanovich v. Hilferty*, 245 A.2d 701, 705 (Pa. Super. 1968)).

The Third Circuit admonishes against application of collateral estoppel to arbitral awards absent extreme care. *Novinger Grp., Inc.*, 2008 WL 5378288, at *13. *See Witkowski v. Welch*, 173 F.3d 192, 206 (3d Cir. 1999) (warning that doubts about collateral estoppel's application to arbitration awards "should usually be resolved against its use"). Procedures may vary from one arbitration procedure to the next, and arbitrators are bound neither by the prevailing case law nor the applicable rules of evidence. *Novinger Grp., Inc.*, 2008 WL 5378288, at *13 (citing *Universal Am. Barge Corp. v. J-Chem, Inc.*, 946 F.2d 1131, 1137 (5th Cir. 1991) (counseling courts to consider "the procedural adequacy of the arbitration proceeding")).

In addition, some district courts in this circuit have regarded unconfirmed arbitration awards as adjudications lacking the finality necessary to preclude subsequent litigation on identical issues. *Novinger Grp., Inc.*, 2008 WL 5378288, at *11 n. 15 (citing *Gruntal & Co., Inc. v. Steinberg*, 854 F. Supp. 324, 337 (D.N. J. 1994) ("Absent judicial confirmation, an arbitration award will not result in a 'final judgment' and cannot, therefore, have preclusive effect on a subsequent litigation.")).

Due to the ambiguity of the finality to be accorded to the non-binding private arbitration award in the Bucks County Court action, this Court declines to apply the doctrine of collateral estoppel. Nevertheless, the definition of "underinsured motor vehicle" under the MVFRL and Gallagher's Policy, as well as her Policy's exhaustion clause, sufficiently preclude Gallagher's federal claim for underinsured motorist insurance coverage.

## CONCLUSION

For the reasons stated, this Court concludes that there is no genuine dispute as to any material fact and finds that Gallagher cannot recover underinsured motorist insurance coverage. Ohio Casualty's motion for summary judgment is granted and this matter is dismissed with prejudice.

An appropriate order consistent with this memorandum opinion follows.


*Nitza I. Quiñones Alejandro, U.S.D.J.*